## IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

KENNETH SHULER,          )
                                     )
          Plaintiff,         )
                                     )
v.                          )         **Case No. 10-CV-667-CVE-PJC**
                                     )
MICHAEL J. ASTRUE, Commissioner of the  )
Social Security Administration,     )
                                     )
          Defendant.     )

## REPORT AND RECOMMENDATION

Claimant, Kenneth Shuler ("Shuler"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Shuler's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. This case has been referred to the undersigned. For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **REVERSED AND REMANDED**.

### Claimant's Background

At the hearing before the ALJ on March 4, 2010, Shuler testified that the last time he worked was in January or February 2008, and he could not work due to his diabetes, blood pressure, and complications from his medications. (R. 21). He also smoked and had sleep apnea. *Id.* He couldn't perform his last job due to required standing for long periods. (R. 21-24). When he stood for long periods, he got dizzy and his legs became numb due to neuropathy. (R. 24). The neuropathy was numbness and severe tingling and pain like needles shooting through his feet. (R. 24-25). He tried medications, but they did not help. (R. 25). To relieve his

symptoms, he would elevate his feet up or soak them at least three or four times a day for about 30 minutes.  *Id.*

Shuler testified that his sleep apnea was not as bad at the time of the hearing, because he was using a CPAP breathing machine every night.  (R. 26).  The side effects from medications had just started in the year before the hearing, and they were dizziness, confusion, and inability to concentrate.  (R. 26-27).  Shuler also testified that he had problems with depression.  (R. 27).

A two-page document indicates that Shuler was assessed for depression on May 10, 2001 by Marvin Y. Jin, M.D.  (R. 187-88).  The form indicated that Shuler had sleeping problems, lack of interest and motivation, and anxiety.  (R. 187).  It also indicated that a precipitating factor was his leave of absence due to a positive drug test for methamphetamine.  *Id.*  His psychomotor status was described as average, his attention fair, his emotions sad, and his thoughts coherent. (R. 188).  His memory was "ok," his intelligence was average, and his insight, reliability, and judgment were all described as good.  *Id.*

Documents from 2001 indicate that Shuler was evaluated for sleep apnea.  (R. 167-86). A letter dated June 15, 2001 by Thomas V. Nunn, D.O. asked insurance coverage to consider surgeries to correct a deviated septum and other conditions that were causing Shuler's obstructive sleep apnea.  (R. 186).

On January 4, 2006, Shuler saw Eric Blackwell, D.O. for a chief complaint of ear pain and dizziness.  (R. 164-65).  Shuler's blood glucose was 311.  (R. 164).  He was diagnosed with otitis media, hyperlipidemia, and type-II diabetes, and several medications were prescribed.  (R. 165).  At a follow up appointment on January 13, 2006, a hearing loss in the right ear was noted. (R. 162).  A fingerstick blood test showed blood sugar of 191.  (R. 163).  Assessments were hyperlipidemia, obesity, and type II diabetes mellitus - uncontrolled.  *Id.*  More medications were

2

prescribed.  *Id.*  On January 27, 2006, Shuler returned to Dr. Blackwell for follow up, and he complained that Lisinopril was having a side effect of making him dizzy.  (R. 160).  Assessments were otitis media, benign essential hypertension, and type-II diabetes mellitus.  (R. 161).  Shuler returned on February 7, 2006 and was assessed with acute sinusitis.  (R. 158-59).  He was referred to Dr. Nunn for a follow up regarding sinusitis and sleep apnea.  (R. 159).

At a July 24, 2006 appointment with Dr. Blackwell, Shuler's chief complaint was written down as a request to discuss medications and "going back to work."  (R. 156-57).  Shuler reported that while he was at work he became dizzy with nausea and extreme feelings of fatigue when the temperature was over 100 degrees.  (R. 156).  Assessments were benign essential hypertension, hyperlipidemia, obesity, type-II diabetes mellitus, and heat exhaustion.  (R. 157).  A follow-up visit on October 27, 2006 was routine.  (R. 154-55).

On November 8, 2006, Shuler saw Terence E. Grewe, D.O., a physician in Dr. Blackwell's practice, for sinus congestion.  (R. 150-53).  Assessments were otitis media, sinusitis, benign essential hypertension, and hyperlipidemia.  (R. 152).  Dr. Grewe counseled Shuler regarding exercise and diet, and referred him for diabetes education.  *Id.*

On October 4, 2007, Shuler saw Dr. Blackwell for a possible sinus infection.  (R. 148-49).  Assessments were sinusitis, benign essential hypertension, and type II diabetes mellitus.  (R. 149).

On January 9, 2009, Shuler saw Dr. Blackwell for follow up and refill of medications.  (R. 236-38).  He stated that he was not compliant with diet or diabetic testing.  (R. 236).  Assessments were benign essential hypertension, diabetic nephropathy, hyperlipidemia, type II diabetes mellitus, and diabetic peripheral neuropathy.  (R. 237).  He returned for a follow up on February 16, 2009.  (R. 233-35).  A note stated that Shuler reported loss of feeling in his fingers

and toes and that he was unable to work as a machinist as a result.  (R. 234).  Assessments were benign essential hypertension, hyperlipidemia, diabetic peripheral neuropathy, and depression. *Id.*

Shuler returned to Dr. Blackwell on June 18, 2009 for a routine follow-up, and he complained of more numbness in his legs, feet, and hands.  (R. 245-47).  The form also noted worsening vision and feelings of weakness.  (R. 245).  On examination, there was decreased response to stimulation by vibration, and there was decrease in proprioception.  (R. 247).  Nail dystrophy was noted.  *Id.*  A note stated that Shuler reported that he had severe pain in his limbs and was unable to work due to imbalance, difficulty sitting or standing for any length of time.  *Id.* Electromyographic testing was requested.  *Id.*  Assessments were benign essential hypertension, diabetic nephropathy, hyperlipidemia, type II diabetes mellitus, diabetic peripheral neuropathy, and diabetic autonomic neuropathy.  *Id.*

John DeWitt, D.O., F.A.A.N., with the Oklahoma State Physicians Clinic wrote a letter to Dr. Blackwell on June 20, 2009 stating that he saw Shuler on that date for electromyographic studies of his legs.  (R. 241-42).  He described Shuler as having experienced numbness, tingling, and painful paresthesia in both legs for about a year, affecting his walk and his balance.  (R. 241). Dr. DeWitt stated the objective findings of the testing and then stated that they were "compatible with a moderately severe diabetic neuropathy bilaterally."  *Id.*

Shuler returned to Dr. Blackwell for routine diabetic check up on September 17, 2009. (R. 243-45).  Assessments were benign essential hypertension, hyperlipidemia, and type II diabetes mellitus.  (R. 244).  Dr. Blackwell recommended an ophthalmology consultation.  *Id.*

On January 5, 2010, Shuler saw John Romano, D.O. with Better Vision Ahead for a diabetes examination, and Dr. Romano wrote a letter to Dr. Blackwell regarding the consultation.

(R. 255).  Dr. Romano was able to give Shuler a prescription that corrected his vision to 20/40 and 20/30.  *Id.*  Shuler had nuclear sclerotic cataracts in both eyes that Dr. Romano believed were the cause of his decreased vision, but Dr. Romano did not believe the cataracts were surgical at the time of the examination.  *Id.*  He saw no evidence of diabetic retinopathy.  *Id.*

Dr. Blackwell completed a form titled Medical Source Statement on January 20, 2010. (R. 260-61).  On this form, Dr. Blackwell checked boxes indicating that Shuler could occasionally lift less than 10 pounds, could stand or walk at one time for a period between 30 minutes and for less than 2 hours total in an 8-hour work day, and could sit for between 1 and 2 hours at one time and for between 2 hours and 6 hours total in an 8-hour work day.  (R. 260).  Dr. Blackwell stated that Shuler needed an assistive device to ambulate, and his explanation is not completely legible.  (R. 261).  It appears that he stated that Shuler would need a cane if he were going to stand for a long period of time.  *Id.*  Dr. Blackwell stated that Shuler could not walk a block at a reasonable pace, and it appears that he wrote "neuropathy" as the explanation, but it is not completely clear.  *Id.*  Dr. Blackwell checked a box indicating that Shuler could not work on an ongoing basis of 8 hours per day and 5 days a week.  *Id.*  His explanation is not legible.  *Id.*  In a space for additional explanation, Dr. Blackwell's answer is again not completely legible but appears to mention depression.  *Id.*  Dr. Blackwell checked a box that Shuler would be absent from work 3 or more times a month due to his impairments or treatment.  *Id.*

Shuler saw Joel Justin Hopper, D.O., an agency consultant, for a physical examination on January 26, 2009.  (R. 202-05).  Dr. Hopper reviewed Shuler's history and complaints.  (R. 202). Shuler weighed 321 pounds.  *Id.*  Dr. Hopper noted that Shuler moved his extremities well, and he stated that Shuler could manipulate paperclips without difficulty although clubbing was present in all of his fingers.  (R. 203).  He stated that Shuler moved about the exam room easily

5

and he considered his gait stable, although he noted that Shuler walked "with his feet externally rotated 45 degrees." *Id.*  His assessments were hypertension, diabetes mellitus type II poorly controlled, hyperlipidemia, depression, obstructive sleep apnea, tobacco abuse, and clubbing "secondary to long-standing respiratory disease, possibly COPD from his history of tobacco abuse." *Id.*

On February 12, 2009, Penny Aber, M.D., a nonexamining agency consultant, completed a Physical Residual Functional Capacity Assessment.  (R. 225-32).  Dr. Aber determined that Shuler had the exertional ability to do light work.  (R. 226). In the space for narrative explanation of these conclusions, Dr. Aber summarized Dr. Hopper's report.  (R. 226-27).  She stated that there was no evidence of neuropathy pain in the medical evidence of record and that Shuler's allegations of pain were "not fully supported."  (R. 227).  She found no other limitations.  (R. 227-32).

Agency consultant Michael D. Morgan, Psy. D. conducted a mental status examination on February 5, 2009.  (R. 206-10).  Dr. Morgan reviewed Shuler's history.  (R. 206-07).  He considered Shuler's memory, concentration, and speech to be normal.  (R. 208).  Dr. Morgan stated that Shuler presented with symptoms, including dysphoria and low motivation, that were consistent with a depressive disorder not otherwise specified.  *Id.*  On Axis I[1] Dr. Morgan diagnosed depressive disorder not otherwise specified.  (R. 209).  Dr. Morgan assessed Shuler's

---

[1]The multiaxial system "facilitates comprehensive and systematic evaluation."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000) (hereafter "DSM IV").

global assessment of functioning ("GAF")[2] as 66-70 current.  *Id.*

Nonexamining agency consultant Sally Varghese completed a Psychiatric Review

Technique Form on February 10, 2009, finding that Shuler's impairment was not severe and that

he had coexisting nonmental impairments.  (R. 211-24).  For Listing 12.04, Dr. Varghese noted

Shuler's depressive disorder not otherwise specified.  (R. 214).  For the "Paragraph B Criteria,"[3]

Dr. Varghese found that Shuler had mild restriction of activities of daily living, mild difficulties

in maintaining social functioning, and mild difficulties in maintaining concentration, persistence,

or pace, with no episodes of decompensation.  (R. 221).  In the "Consultant's Notes" portion of

the form, Dr. Varghese summarized Dr. Morgan's report.  (R. 223).

## Procedural History

On November 19, 2008, Shuler filed an application for disability insurance benefits

alleging that he became disabled on January 27, 2008.  (R. 87-93).   Shuler's application was

denied initially and on reconsideration.  (R. 40-47).  An administrative hearing was held before

---

[2]The GAF score represents Axis V of a Multiaxial Assessment system. *See* DSM IV at
32-36.   A GAF score is a subjective determination which represents the "clinician's judgment of
the individual's overall level of functioning." *Id.* at 32.  The GAF scale is from 1-100. A GAF
score between 21-30 represents "behavior is considerably influenced by delusions or
hallucinations or serious impairment in communication or judgment . . . or inability to function
in almost all areas." *Id.* at 34.  A score between 31-40 indicates "some impairment in reality
testing or communication . . . or major impairment in several areas, such as work or school,
family relations, judgment, thinking, or mood." *Id.*   A GAF score of 41-50 reflects "serious
symptoms . . . or any serious impairment in social, occupational, or school functioning."  *Id.*

[3]There are broad categories known as  the "Paragraph B Criteria" of the Listing of
Impairments used to assess the severity of a mental impairment. The four categories are (1)
restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3)
difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of
decompensation, each of extended duration.  Social Security Ruling ("SSR") 96-8p; 20 C.F.R.
Part 404 Subpt P, App. 1 ("Listings") §12.00C.   *See also Carpenter v. Astrue*, 537 F.3d 1264,
1268-69 (10th Cir. 2008).

ALJ John Volz on March 4, 2010.  (R. 18-36).  By decision dated March 22, 2010, the ALJ

found that Shuler was not disabled.  (R. 8-14).  On August 19, 2010, the Appeals Council  denied

review of the ALJ's findings.  (R. 1-3).  Thus, the decision of the ALJ represents the

Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 404.981.

### Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment." 42 U.S.C. § 423(d)(1)(A).   A claimant is disabled under the Act only if his

"physical or mental impairment or impairments are of such severity that he is not only unable to

do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability

claim.  20 C.F.R. § 404.1520.[4]  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988)

(detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not

---

[4]Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Decision of the Administrative Law Judge

The ALJ found that Shuler met the insured status requirements through December 31, 2010. (R. 10). At Step One, the ALJ found that Shuler had not engaged in any substantial gainful activity since his alleged onset date of January 27, 2008. *Id.* At Step Two, the ALJ found that Shuler had severe impairments of "diabetes mellitus, sleep apnea, morbid obesity, and hypertension." *Id.* The ALJ discussed Shuler's complaint of depression and concluded that it was not a severe impairment. (R. 10-11). At Step Three, the ALJ found that Shuler's impairments did not meet any Listing. *Id.*

The ALJ found that Shuler had the RFC to perform the full range of light work. (R. 11). The ALJ determined that at Step Four, Shuler could not return to his past relevant work. (R. 13). At Step Five, the ALJ found that, considering Shuler's age, education, work experience, and RFC,

there were jobs existed in significant numbers in the national economy that he could perform.  *Id.*

Therefore, the ALJ found that Shuler was not disabled at any time through the date of the

decision.  (R. 14).

### Review

Shuler argues that the ALJ erred in his consideration of Dr. Blackwell's treating physician

opinion evidence and that the ALJ's RFC determination was not supported by substantial

evidence.  The undersigned recommends that reversal is required because the ALJ's consideration

of Dr. Blackwell's opinion evidence was legally insufficient.  Because the undersigned

recommends reversal on this basis, the allegation of error relating to whether the ALJ's RFC

determination was supported by substantial evidence is not considered.

Regarding opinion evidence, generally the opinion of a treating physician is given more

weight than that of an examining consultant, and the opinion of a nonexamining consultant is

given the least weight.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A treating

physician opinion must be given controlling weight if it is supported by "medically acceptable

clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial

evidence in the record.  *Hamlin*, 365 F.3d at 1215.  *See also* 20 C.F.R. § 404.1527(d)(2).  Even if

the opinion of a treating physician is not entitled to controlling weight, it is still entitled to

deference and must be weighed using the appropriate factors set out in Section 404.1527.  *Langley*

*v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  The ALJ is required to give specific reasons

for the weight he assigns to a treating physician opinion, and if he rejects the opinion completely,

then he must give specific legitimate reasons for that rejection.  *Id.*

Here the ALJ gave several reasons why he discounted Dr. Blackwell's opinion evidence.

(R. 13).  First, the ALJ apparently considered that Dr. Blackwell's Medical Source Statement

dated January 10, 2010 could only be explained if there had been a "great deterioration" from a February 16, 2009 appointment with Dr. Blackwell, and the ALJ said there was no evidence of such a deterioration.  *Id.*  The ALJ's description of this February 2009 appointment emphasized the portion of the notes saying that Shuler stated that he was doing well.  (R. 13, 233).  The ALJ also quoted the computerized language under the heading "History of Present Illness" of no feelings of weakness, no tingling of limbs, no numbness of the limbs, and no lesion on the feet. *Id.*  However, the ALJ did not quote the notes that Dr. Blackwell apparently typed in at the end of the computerized record for the appointment: "[Shuler] reports loss of feeling in fingers and toes; reports being unable to work as a machinist as [a result]."  (R. 234).[5]  The typed note from the February 16, 2009 office visit was consistent with the assessment of diabetic peripheral neuropathy that Dr. Blackwell made that day.  *Id.*

In his factual summary, the ALJ noted that on June 18, 2009,[6] Shuler returned and complained of severe pain and difficulty sitting or standing for long periods of time.  (R. 12, 247). This was again in the "Notes" section of that visit, and the other sections, not summarized or referenced by the ALJ in his decision, noted more numbness in his legs, feet, and hands.  (R. 246). On examination at that visit, Dr. Blackwell found decreased response to stimulation by vibration, decrease in proprioception, and nail dystrophy.  (R. 247).  His assessments included diabetic peripheral neuropathy and diabetic autonomic neuropathy.  *Id.*  The ALJ did not accurately note

---

[5]The language under the heading "History of Present Illness" appears to be a computer menu, and it appears, sometimes saying "feelings of weakness" and sometimes saying "no feelings of weakness" in the records for most of the office visits.  (R. 148, 154, 156, 160, 162, 164, 233, 236, 243, 246, 249).  In contrast, most of the office visits did not include a "Notes" section.

[6]The ALJ said the date of this visit was September 17, 2009, but it was June 18, 2009. (R. 12, 243-47).

all of the pertinent information from the February 6 and June 18, 2009 office visits, and the evidence does not support the ALJ's implied finding that there was a great discrepancy between the February 2009 office visit and Dr. Blackwell's Medical Source Statement of January 10, 2010.

The ALJ's second statement, that Dr. Blackwell's Medical Source Statement did not appear "to be grounded on any objective evidence" is patently untrue. The longitudinal record of Shuler's many office visits with Dr. Blackwell from January 2006 through January 2010 included substantial objective evidence that would support at least some of the restrictions that Dr. Blackwell included in his Medical Source Statement. (R. 148-201, 233-40, 243-52). Shuler was extremely obese throughout this period, weighing over 300 pounds, and at almost every visit his blood pressure and blood sugar were measured as being outside of normal limits. *Id.* All of this is objective evidence that could support, for example, Dr. Blackwell's finding that Shuler could only stand or walk for less than 2 hours in an 8-hour work day. (R. 260).

On examination on June 18, 2009, a day when Shuler complained of increased numbness in his extremities, Dr. Blackwell noted nail dystrophy. (R. 245-47). Changes in nail appearance are objective symptoms, and Dr. Blackwell apparently believed they were evidence of diabetic autonomic neuropathy, one of his assessments on that date. (R. 247). Dr. Blackwell referred Shuler for electromyographic testing which was conducted on June 20, 2009. (R. 241). This objective testing was consistent with moderately severe diabetic neuropathy in Shuler's legs, and this supported Dr. Blackwell's assessment of diabetic neuropathy which he made on three occasions in 2009. (R. 234, 237, 247). This objective evidence of diabetic neuropathy again could support Dr. Blackwell's conclusion that Shuler was restricted in how much standing or walking he could do during an 8-hour work day. Thus, the ALJ's statement that Dr. Blackwell's Medical Source Statement did not appear to be grounded on any objective evidence is simply not

correct.

Two of the ALJ's specific criticisms of Dr. Blackwell's completion of the Medical Source Statement form are more persuasive, but they are not weighty enough to undermine Dr. Blackwell's opinion evidence to the extent that the ALJ was entitled to disregard it.  He singled out Dr. Blackwell's restriction of Shuler to lifting occasionally less than 10 pounds as "particularly unsubstantiated" and the assertion that Shuler's condition would keep him away from work more than 3 times a month as "unsupported."  (R. 13).  While it is more difficult to correlate these particular items in the Medical Source Statement form to the medical findings in Dr. Blackwell's records, these items also are not central to Shuler's claim of disability.  Shuler did not testify that he was disabled because he couldn't lift or because he would be absent from work more than 3 days a month.  He instead testified that he couldn't work because he couldn't stand for long periods, he needed to elevate his legs often, and his medications made him dizzy and made it difficult for him to concentrate.  (R. 21-27).  While Dr. Blackwell's extreme responses on parts of the form that did not relate directly to Shuler's claim of disability tend to undermine his overall responses to some extent, the undersigned finds that this was not a sufficient justification for the ALJ here to reject Dr. Blackwell's opinion evidence entirely.  *See, e.g., Garcia v. Barnhart*, 188 Fed. Appx. 760, 764 (10th Cir. 2006) (unpublished) (minor differences in how treating physician described the claimant's ability to sit were not inconsistencies that undermined his opinion); *Moore v. Barnhart*, 114 Fed. Appx. 983, 993 (10th Cir. 2004) (unpublished) (reviewing court disagreed with ALJ's characterization of treating physician's reports as "contradictory" when the purposes of the reports were not the same).

The ALJ's final reason is also not sufficient to justify a complete disregard of Dr. Blackwell's opinion evidence.  The ALJ stated that Shuler's "diabetic neuropathy, while

significant, has not forced the claimant to use an assistive device." (R. 13). There is no requirement under Social Security regulations that a claimant must need an assistive device before he can be found disabled. *Compare Hamlin*, 365 F.3d 1208, 1221 (claimant's failure to require an assistive device for his neck did not undermine his credibility when no doctor had recommended one or suggested it would provide pain relief). The fact that Shuler was able to ambulate without an assistive device did not undermine Dr. Blackwell's opinion evidence regarding the length of time Shuler could stand and/or walk during an 8-hour work day.

While the ALJ did not explicitly say so, it is evident that he rejected the report of Dr. Blackwell entirely in favor of the Physical Residual Functional Capacity Assessment of agency nonexamining consultant Dr. Aber. (R. 13). His reasons for this complete rejection were not legally sufficient. The undersigned recommends that this case be remanded so that the ALJ can consider Dr. Blackwell's opinion evidence and give sufficient reasons for the weight that he finds that evidence should be accorded.

The undersigned emphasizes that "[n]o particular result" is dictated on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003), *citing Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).

Because the error of the ALJ related to his stated reasons for completely rejecting the report of Dr. Blackwell requires reversal, the undersigned does not address the remaining contentions of Shuler. On remand, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by Shuler.

## Conclusion

Based on the foregoing, the undersigned recommends that the decision of the Commissioner denying disability benefits to Claimant be **REVERSED AND REMANDED.**

## Objections

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b), a party may file specific written objections to this Report and Recommendation, but must do so by September 28, 2011.  If specific written objections are timely filed, the District Judge assigned to this case will make a *de novo* determination in accordance with Rule 72(b).  A party waives District Court review and appellate review by failing to timely file objections.  *In re Key Energy Resources, Inc.*, 230 F.3d 1197 (10th Cir. 2000).

Dated this 14th day of September, 2011.


Paul J. Cleary
United States Magistrate Judge

15